**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**LOLITA BRONZINI and EIMONT**
**BRONZINI,**

       **Plaintiffs,**

  -against-

**CLASSIC SECURITY LLC,**

       **Defendant.**
-----------------------------------------------------------------x

**07 Civ. 11104 (HB)**
**08 Civ. 475 (HB)**

**OPINION & ORDER**

**Hon. HAROLD BAER, JR., United States District Judge**[*]**:**

  Plaintiffs Eimont Bronzini ("Mr. Bronzini") and Lolita Bronzini ("Mrs. Bronzini"), a married couple who immigrated to the United States from Lithuania, commenced this action against their current employer, Defendant Classic Security LLC ("Classic"), alleging unlawful employment discrimination based on their race, national origin, age, retaliation and Mrs. Bronzini's gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000(e), *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, the New York Sate Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*, and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101, *et seq.* Mr. Bronzini also asserts discrimination claims pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. §§ 206(d), *et. seq.* Mrs. Bronzini also asserts a discrimination claim pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.*

  Defendant now moves for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, Defendant's motion is granted.

### I. FACTUAL BACKGROUND

**A.**  **Mr. Bronzini**

  Mr. Bronzini asserts that Classic failed to provide him with work assignments, failed to pay him at the pay rate of a Fire Safety Director ("FSD"), made mistakes in his paychecks and did not provide him with breaks. Classic, a limited liability company, provides twenty-four-hour, on-site security at various buildings and construction sites throughout New York City and employs

---

[*] Antonio Reyes, a Fall 2008 and Spring 2009 intern in my Chambers and a second-year law student at Cardozo Law School, provided substantial assistance in the research and drafting of this opinion.

approximately 700 men and women. (Jessamy Aff. ¶¶ 2, 16.) To be certified as a FSD, an employee must take a fire safety class and pass both a written test and an on-site examination administered by the fire department. The on-site examinations are unique to each building. (*Id.* ¶ 18.)

Classic's duties with respect to employees' schedules are governed by a collective bargaining agreement ("CBA") between Classic and the National Union of Security Officers & Guards ("Union"). (*Id.* ¶ 14.) The CBA permits Classic to set work schedules based on company needs. (*Id.*) All of Classic's security officers and FSDs are Union members.

Classic assigns work shifts to employees based on each employee's skill set, experience, pay rate, the preference of Classic's clients and the employee's preferred work schedule. (*Id.* ¶ 4.) Additionally, a client of Classic may request that Classic remove specific employees from its building. (Pls.' Statement of Facts ¶ 9.) Employees who are not given permanent shift assignments or who want more hours are assigned to the "bench." (Jessamy Aff. ¶ 5.) Employees assigned to the bench are "on call" to fill in for absent security personnel and are guaranteed a minimum of four hours of pay per day irrespective of whether they are assigned to a full eight-hour shift. (*Id.*)

Classic does not have a formal employee break policy. (Jessamy Aff. ¶ 11; Patchen Aff. Ex. E.) At job sites where two or more security officers are on duty, officers may provide coverage for each other to allow for breaks. (Jessamy Aff. ¶ 11.) Where only one officer is on duty, field supervisors, who visit each job site, provide the officer with a break. (Id. ¶ 9.)

Mr. Bronzini was hired as a security officer on January 22, 2004, with an initial salary of $9.00 per hour. In 2005, a year in which he worked an average of thirty-seven hours per week, Mr. Bronzini submitted payroll discrepancy forms on five occasions to address payroll errors. (*Id.* ¶ 48.) Classic investigated his claims and paid Mr. Bronzini a total of $387.00 in back pay, as he requested. (*Id.* ¶ 48; Pls.' Ex. 37.) Similarly, in 2007, Mr. Bronzini received back pay due to payroll discrepancies eleven times, for a total 47.15 hours of work. (Jessamy Aff. ¶ 49.)

Mr. Bronzini completed the FSD training course on March 15, 2006. He passed the written FSD exam on March 29, 2006, and received a certificate of completion from the fire department on August 29, 2006. (*Id.* ¶ 20.) On December 7, 2006, Mr. Bronzini received a raise from $9.00 to $12.00 per hour to reflect his new responsibilities as a security officer with fire safety training. (*Id.* ¶ 21.) However, Mr. Bronzini never completed the on-site examination that was required to complete his FSD training. He was first assigned to 625 Madison Avenue ("625 Madison") as a security officer with fire safety training. (*Id.*) On December 8, 2006, Mr. Bronzini called the Union and complained that he nevertheless was paid less than the FSDs staffed at that building. Mr.

2

Bronzini's charge of discrimination, filed January 3, 2007, with the Equal Employment Opportunity Commission ("EEOC"), noted the pay difference. On January 10, Classic gave Mr. Bronzini another raise, including retroactive pay to November 18, 2006, in the amount of $687.23. Classic stated that Mr. Bronzini would receive another raise once he completed the on-site examination that was required for FSD certification. (*Id.* ¶ 21.)

On March 6, 2007, Classic's Director of Operations, Roderick Jessamy ("Jessamy"), scheduled two such on-site exams at 625 Madison for Mr. Bronzini, for April 7 and September 28, 2007.[1] (*Id.* ¶ 25.) However, before the first scheduled examination, Classic received several complaints about Mr. Bronzini's job performance and his interactions with others. For example, on March 7, 2007, the account representative responsible for 625 Madison sent an email to Jessamy objecting to Mr. Bronzini's professionalism and fire safety competency. He also stated that Classic's client, *i.e.*, 625 Madison, had complained about Mr. Bronzini's interactions with its tenants and his interaction with his coworkers. (*Id.* Ex. J.) Classic's fire safety consultant, Metro Fire Safety,[2] also contacted Jessamy with a complaint that Mr. Bronzini had problems listening to others and that Mr. Bronzini could have problems making announcements to the building, in the event of a fire emergency, because of his lack of proficiency in the English language. (*Id.* Ex. M.)

Classic claims that, as a result of such complaints, it canceled Mr. Bronzini's March 10 and 17 shifts at 625 Madison and permanently eliminated his Saturday shift. On March 19, 2007, Mr. Bronzini filed a grievance with the Union alleging that his shift assignments were improperly removed, but the Union took no action. (*Id.* ¶¶ 28, 29.) Classic then cancelled the on-site exams scheduled at 625 Madison and reassigned Mr. Bronzini to 320 E. 53rd Street ("53rd Street"). (*Id.* ¶¶ 30, 32.) Jessamy thus rescheduled the on-site FSD exam for October 31, 2007 at 53rd Street, but asserts that he was forced to cancel the exam due to problems with 53rd Street's fire command station. (*Id.* ¶¶ 34, 35.) After receiving more complaints about Mr. Bronzini's job performance, Classic reassigned him to 415 E. 59th Street ("59th Street"). (*Id.* Exs. X, W.) On August 14, 2008, the fire department arrived at 59th Street to administer Mr. Bronzini's on-site exam but refused to do so, allegedly because the 59th Street location did not require its officers to be certified FSDs.

**B.**     **Mrs. Bronzini**

Mrs. Bronzini was hired on December 2, 2004 as a security officer, almost two months after she submitted her employment application to Classic. During the first seven months of her employment, Mrs. Bronzini was assigned to the "bench." On December 25, 2004, Mrs. Bronzini,

---

[1] The second exam was scheduled in case Mr. Bronzini failed the first exam.
[2] Metro Fire Safety trains Classic's officers to help them prepare for their on-site FSD exam.

the only employee on the "bench" that day, was assigned to fill a vacant shift at a construction site at 120 E. 29th Street ("29th Street"). (Am. Compl. at 1.) Mrs. Bronzini claims that this assignment was not safe because there was no heat, garbage cluttered the ground, and rats ran around the site. (*Id.*) There is no evidence that Mrs. Bronzini complained about her work assignment. In July 2005, Mrs. Bronzini received a forty-hour-per-week work schedule.

From October 16 to November 27, 2006, Mrs. Bronzini took a leave of absence so that she could care for her elderly mother. (Jessamy Aff. ¶ 51.) During her absence, Carol Reddick ("Reddick"), a 42-year-old African-American woman, filled in for Mrs. Bronzini's one-day-per-week shift at 35 E. 21st Street ("21st Street"). (*Id.*) Reddick already worked four days per week at that location. Classic asserts that, during this time, the 21st Street building manager requested that Ms. Reddick permanently take over Mrs. Bronzini's one-day-per-week shift, and Classic complied. (*Id.*) As a result, Mrs. Bronzini's total hours per week at all the sites at which she worked were reduced to thirty-two. (*Id.* ¶ 53.) Classic gave Mrs. Bronzini the opportunity to make up the additional hours from the bench. (*Id.*)

On March 23, 2007, Mrs. Bronzini submitted a Vacation Request Form for three sets of dates totaling ten days of vacation time. (*Id.* ¶ 56.) Classic approved Mrs. Bronzini's request but ultimately paid her for only the first four days listed on her Vacation Request form. (*Id.*) When Mrs. Bronzini asked Classic to pay her for the remaining six vacation days, Classic did so. (*Id.* ¶¶ 57, 58.)

On January 11, 2007, Plaintiffs filed charges of discrimination against Classic with the EEOC, which issued notices of right to sue on November 1, 2007. (Patchen Aff. Exs. A, C.) On December 7, 2007, Mrs. Bronzini filed her Complaint against Classic, and on February 25, 2008, she filed an Amended Complaint. On January 18, 2008, Mr. Bronzini filed his Complaint against Classic, and on March 10, 2008, he filed an Amended Complaint. On March 25, 2008, this Court consolidated Plaintiffs' actions.

## II. STANDARD OF REVIEW

A court will not grant a motion for summary judgment pursuant to Fed. R. Civ. P. 56 unless it determines that there is no genuine issue of material fact and the undisputed facts are sufficient to warrant judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). The court must resolve all ambiguities, and draw all inferences, against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*). "There is no issue for trial unless there is sufficient

4

evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.

Courts must be cautious in deciding whether to grant summary judgment "[i]n a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). However, "summary judgment may be appropriate even in the fact-intensive context of employment discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 466 (2d Cir. 2001). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997). "[T]he test for summary judgment is [ultimately] whether the evidence can reasonably support a verdict in plaintiff's favor." *James v. New York Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000).

### III.  DISCUSSION

**A.      Plaintiffs' Claims Pursuant to Title VII and the ADEA**

Plaintiffs claim that Classic unlawfully discriminated against them on account of their national origin, race, gender and age in violation of Title VII and the ADEA. Title VII makes it unlawful "for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex or national origin." 42 U.S .C. § 2000e-2(a)(1). Title VII discrimination claims are analyzed under the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The plaintiff has the initial burden of establishing a *prima facie* case of discrimination by showing that he or she (1) belongs to a protected class; (2) was qualified for his or her position; (3) suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. 411 U.S. at 792-93; *see also Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). Once the plaintiff satisfies this initial burden, the burden of going forward shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. 411 U.S. at 792-93; *see also Mandell v. County of Suffolk,* 316 F.3d 368, 380 (2d Cir. 2003). Finally, if the defendant produces sufficient "[e]vidence of legitimate reasons for its actions, the burden returns to the plaintiff to prove, by a preponderance of the evidence, that the real reason for the adverse employment decision was discrimination." *Id.* at 380-81.

Likewise, "[t]o establish a *prima facie* case of age discrimination under the ADEA, a claimant must demonstrate that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action

occurred under 'circumstances giving rise to an inference of discrimination.'" *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Roge v. NYP Holdings, Inc.,* 257 F.3d 164, 168 (2d Cir. 2001)).  Once the plaintiff has established a *prima facie* case, the burden of going forward shifts to the defendant to provide a legitimate, non-discriminatory rationale for its actions.  *See Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000).  If the defendant satisfies this burden, then the burden returns to the plaintiff to establish that the proffered reason is a pretext for discrimination.  *Id.*

Here, Plaintiffs have failed to establish that any adverse employment actions occurred under circumstances giving rise to an inference of discriminatory intent.  Further, Classic has provided legitimate non-discriminatory reasons for its actions, and Plaintiffs have produced no evidence to show that such reasons were pretextual.

### 1. Mr. Bronzini

Mr. Bronzini alleges that, because he is a "white foreigner," Classic subjected him to discrimination and he suffered the following adverse employment actions as a result: (1) he was removed from his permanent assignments in 2007; (2) he receives a lower salary than African-American FSDs; (3) Classic reduced his weekly forty-hour work schedule during parts of 2004 and 2005 even though he was never reprimanded or disciplined; (4) portions of his salary were withheld; and (5) he did not receive any breaks during his shifts.  Mr. Bronzini does not allege that anyone employed at Classic made any discriminatory remarks to him.  Moreover, to the extent that Mr. Bronzini alleges that African-American employees were afforded better treatment than he, Classic has provided a legitimate non-discriminatory reason.  It is also worth noting that both Plaintiffs remain employed at Classic.

First, the record make clear that Classic's clients were not satisfied with Mr. Bronzini's job performance.  Classic's clients complained about Mr. Bronzini's conduct at work and requested to have him removed from their buildings.  On this basis, a reasonable fact-finder would have no grounds to find that discrimination was a contributing factor in Classic's decision to remove him from his 625 Madison and 59th Street assignments in 2007.  Classic's decisions were based on a justified belief that Mr. Bronzini was "making the company look bad." (*Pls.'* Ex. 50.)

Second, Classic explained that two African-American officers who were certified as FSDs were hired specifically for the FSD position.  Classic asserts that it offered them salaries that it believed were necessary to convince them to accept employment offers.  Mr. Bronzini, on the other hand, chose to undertake the FSD certification process after he was hired and had been working as a security officer.  At least one of the FSDs had three years of prior work experience as a security officer shift supervisor, while Mr. Bronzini had no experience.  (Pls.' Ex. 12B.)  Further, Mr.

6

Bronzini never completed the on-site examination that was required for FSD certification.  Finally, Classic has produced evidence that shows that five African-American FSDs are paid $10.00 to $12.00 per hour, which is the same range as Mr. Bronzini's salary.  The numbers of African-American security officers and African-American FSDs employed by Classic are unknown.  Therefore, Mr. Bronzini cannot show that Classic treated African-American employees more favorably, or that any wage discrepancy was a pretext for discrimination.

With respect to the payroll discrepancies that occurred in 2005 and 2007, Classic maintains that payroll mistakes are not uncommon.  For example, in 2007, sixteen other employees received forty or more hours of back pay, as a result of payroll errors, and fifteen of those employees were male and eleven were African-American.  (Jessamy Aff. ¶ 49.)  Mr. Winston, one of Classic's African-American employees, received fifty-six hours of back pay in 2007, and Mr. Salim, another African-American employee, received 112.5 hours of back pay.  (*Id.*)

Finally, in the absence of any evidence of discriminatory animus, this Court is persuaded by Classic's argument that Mr. Bronzini's work schedule in 2004 and 2005 was based on company needs and that Classic cannot guarantee that each employee receive an identical number of work hours.  Moreover, the evidence establishes that in 2005, Mr. Bronzini worked an average of thirty-seven hours per week, nearly a full-time work load.  Further, Mr. Bronzini himself has acknowledged that Classic's "no-break" policy applies equally to all employees and thus cannot form the basis for a claim of discrimination.

    2.    *Mrs. Bronzini*

Similarly, Mrs. Bronzini claims that she was discriminated against because of her race, gender, national origin and age.  She asserts that she suffered the following adverse employment actions: (1) she did not receive a forty-hour workweek; (2) she was removed from her Friday shift at 21st Street; (3) she was temporarily assigned to a site with unsafe conditions on December 25, 2004; (4) she worked without receiving any breaks; (5) she was assigned to a site that required her to stand; (6) there was a delay in issuing her vacation pay; and (7) Classic did not hire her until two months after she submitted her employment application even though she possessed a valid security license.  Classic argues that these actions stem from company-wide policies that Classic applies equally to all its employees.

First, no reasonable juror could find that the two-month interval between Mrs. Bronzini's employment application and her hire date was discriminatory, as Mrs. Bronzini has not made any specific allegation, nor produced any evidence, to the effect that the delay was due to a discriminatory animus.  Moreover, a two-month period from the submission of an application to the

7

date of hire is commercially reasonable.  Classic asserts that before it can hire someone, it must review numerous applications, determine its staffing needs and conduct background checks.

Second, Mrs. Bronzini has produced no evidence to show that Classic's decision to remove her from her Friday shift at 21st Street was based on her race, gender, national origin or age.  On the other hand, Classic has produced evidence that it assigned Reddick to replace Mrs. Bronzini due to the request by Classic's client.

With respect to the "unsafe" working conditions at the construction site to which Mrs. Bronzini was assigned on December 25, 2004, at 29th Street, Mrs. Bronzini has produced no evidence of unsafe conditions, nor has she made any specific factual allegations or submitted any evidence that might suggest a discriminatory motive for that assignment.  Classic asserts that it assigned Mrs. Bronzini to that site on that day because she was the only employee "on the bench," and thus the only security officer available to work.  Moreover, Classic maintains that an African-American employee relieved Mrs. Bronzini from her shift at that location during the evening of December 25, 2004.

Further, Classic's delay in issuing Mrs. Bronzini's vacation pay appears to have been the result of a clerical error or a misunderstanding, and Classic ultimately did pay her for her full vacation time.  Classic maintains that, because Mrs. Bronzini included three separate sets of dates on her Vacation Request Form, Classic understood that these were alternative requests, and thus it paid her vacation pay for the first set of dates, which appeared to be her first choice.  When Mrs. Bronzini complained, Classic paid her vacation pay for the full ten days.  As Mrs. Bronzini offers no evidence to show that Classic had any discriminatory motive, she cannot show that she was discriminated against on the basis of her protected class.

Plaintiffs have proffered no evidence from which a rationale fact-finder could conclude that Classic discriminated against them on the basis of their protected classes.  Plaintiffs offer only their subjective belief as to Classic's motivation, but this, without more, is insufficient to survive a motion for summary judgment.  *See, e.g.*, *Henkin v. Forest Labs., Inc.,* No. 01 Civ. 4255, 2003 WL 749236, at *8 (S.D.N.Y. Mar. 5, 2003).  Further, they have made no specific allegations concerning age discrimination.

**B.**     **Mr. Bronzini's Claims Pursuant to the Equal Pay Act**

Mr. Bronzini has failed to show a genuine issue of material fact with respect to his claim of gender discrimination pursuant to the EPA.  To show a violation of the EPA, Mr. Bronzini "[m]ust first establish a *prima facie* case of discrimination by showing: 'i) the employer pays different wages to employees of the opposite sex; ii) the employees perform equal work on jobs requiring

8

equal skill, effort, and responsibility; and iii) the jobs are performed under similar working conditions.'" *Belfi*, 191 F.3d at 135 (quoting *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1310 (2d Cir. 1995)) (citations omitted).  If a plaintiff establishes a *prima facie* case under the EPA, the burden of going forward shifts to the employer to show that the wage disparity is justified by any one of the EPA's affirmative defenses: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1).  To "[s]uccessfully establish the 'factor other than sex' defense, the employer must . . . demonstrate that it had a legitimate business reason or . . . gender-neutral factor that . . . [led to the wage disparity]."  191 F.3d at 136 (quoting *Aldrich v. Randolph Ctr. Sch. Dist.,* 963 F.2d 520, 526-27 & n. 1 (2d Cir. 1992).

Mr. Bronzini has failed to establish a *prima facie* case under the EPA.  Mr. Bronzini contends that he receives a lower salary than women who were employed by Classic as FSDs. Classic's payroll records reveal that during 2006 Mr. Bronzini received $12.00 per hour as a FSD trainee, but Ms. Winston earned $16.00 per hour as a certified FSD.  However, Mr. Bronzini was never certified as a FSD because he never completed the on-site examination, and therefore Ms. Winston was not a similarly situated employee.

Further, Classic has sufficiently established that the wage disparity was justified because it was based on a "factor other than sex."  Classic argues that (1) Ms. Winston was specifically hired as a FSD and was offered a salary that Classic believed was necessary for her to accept its employment offer; and (2) Ms. Winston completed the required on-site exam, whereas Mr. Bronzini has not.  Moreover, Mr. Palmer, a male employee who was hired as a FSD and also assigned to 625 Madison, was paid $15.00, $3.00 more than Mr. Bronzini.  Because Mr. Bronzini has not produced any evidence that demonstrates that Classic's proffered explanation is a pretext for gender discrimination, Classic is entitled to summary judgment on the EPA claim.

### C. <u>Mr. Bronzini's Claim Pursuant to the ADA</u>

Mr. Bronzini has failed to raise a genuine issue of material fact with respect to his ADA claim.  He alleges that it is difficult for him to stand for extended periods of time due to spinal trauma, and that Classic discriminated against him by assigning him to standing-only job sites.

Under the ADA, a plaintiff has the initial burden of establishing a *prima facie* case.  *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869 (2d Cir. 1998).  To establish a *prima facie* case, the plaintiff must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA; (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he has suffered an adverse employment action because

9

of his disability. *See id.* at 869-70. Mr. Bronzini has not established that he suffers from a disability within the meaning of the ADA, or that defendants took any adverse employment action against him on account of his disability.

The ADA defines a disability as "(1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; or (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2). "'To be substantially limited in the major life activity of working . . . , one must be precluded from more than one type of job, a specialized job, or a particular job of choice.'" *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001) (quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999)).

Despite his spinal trauma, Mr. Bronzini was able to work at standing-only job assignments for more than a year. Even assuming, *arguendo*, that Mr. Bronzini's back impairment were a "disability" within the meaning of the ADA, he has not shown that Classic refused to provide him with reasonable accommodation. To the contrary, Mr. Bronzini admitted in his deposition that when he supplied Classic with documentation detailing his back impairment, Classic stopped giving him "standing-only" assignments. (Bronzini Dep. 36:17-23, Ex. E to Patchen Aff.) Accordingly, Classic is entitled to summary judgment on Mr. Bronzini's ADA claim.

### D. Plaintiffs' Retaliation Claims

Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in a [Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). "Title VII is violated when a 'retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" *Terry*, 336 F.3d at 140-41 (quoting *Cosgrove v. Sears Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)). Title VII retaliation claims are evaluated under a three-step burden-shifting analysis. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998). First, to establish a *prima facie* case of retaliation, the employee must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *McMenemy v. City of Rochester,* 241 F.3d 279, 282-83 (2d Cir. 2001). The court's task is to determine whether there is evidence sufficient to permit a rational trier of fact to infer a retaliatory motive. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir. 1987). If the employee satisfies her initial burden, a presumption of retaliation arises and the burden is on the employer to articulate a legitimate, non-retaliatory reason for the adverse

employment action. Finally, if the employer offers such proof, the employee must establish that retaliation was a substantial reason for the adverse employment action. *See Fields v. New York State Office of Mental Retardation & Developmental Disabilities,* 115 F.3d 116, 120-21 (2d Cir. 1997).

Plaintiffs allege that Classic retaliated against them for Mr. Bronzini's December 7, 2007 letter to the Union concerning his salary as a FSD trainee, and for the EEOC charges filed by Plaintiffs. Plaintiffs predicate their retaliation claims upon (1) Classic's removal of Mrs. Bronzini's one-day-per-week shift at 21st Street; (2) a reduction in Mrs. Bronzini's hours per week from forty to thirty-two; (3) Classic's removal of Mr. Bronzini's March 10 and 17 shifts at 625 Madison; and (4) Classic's cancellation of the April 7 and September 28, 2007 on-site FSD exams scheduled at 625 Madison for Mr. Bronzini.

However, even assuming that Plaintiffs were able to establish a *prima facie* case of retaliation, Classic has articulated legitimate, non-retaliatory reasons for the alleged adverse employment actions, as discussed *supra* with respect to Plaintiffs' Title VII claims. Likewise, Plaintiffs have not produced evidence sufficient to allow a rationale jury to find that Classic's proffered reasons are pretext. Accordingly, Classic is entitled to summary judgment on Plaintiffs' retaliation claims.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk is instructed to close this matter and remove it from my docket.

IT IS SO ORDERED.
New York, New York
January 15, 2009

_____
U.S.D.J.

11